**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **BUILDER SERVICES GROUP, INC., d/b/a QUALITY INSULATION,** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **No. 2:25-cv-00387-KFW** |
| **WESLEY CHARLES GROVER and ACADIA INSULATION, LLC,** | ) | |
| **Defendants** | ) | |

**ORDER ON MOTION TO DISMISS**[1]

Builder Services Group, Inc., doing business as Quality Insulation, brings claims against its former employee Wesley Charles Grover and his company Acadia Insulation, LLC, for allegedly misappropriating Quality Insulation's confidential information and trade secrets. *See* Complaint (ECF No. 1). Grover and Acadia Insulation now move to dismiss Quality Insulation's complaint for failure to state a claim. *See* Motion (ECF No. 6-1). For the reasons that follow, Grover and Acadia Insulation's motion is denied.

## I. Background

### A. Factual Allegations

The following facts are alleged in Quality Insulation's complaint.

Quality Insulation provides residential and commercial building insulation and gutter products and services. Complaint ¶¶ 16, 18. Quality Insulation hired

[1] The parties have consented to me presiding over this case. *See* ECF No. 13.

Grover as a sales consultant in its Yarmouth office in 2016. *Id.* ¶¶ 21, 23, 25. In its August 2016 offer letter, Quality Insulation advised Grover that he would have to sign a confidentiality and noncompete agreement as a condition of his employment. *Id.* ¶¶ 21-22; ECF No. 1-1. Grover signed such an agreement before commencing his employment in September 2016, and that signed agreement was placed in a locked filing cabinet in the Division Manager Jerry Brown's office. Complaint ¶¶ 24-27.

In the agreement, Grover agreed that restrictions were necessary to avoid harm to Quality Insulation's business interests. *Id.* ¶ 58; ECF No. 1-2 at 3-4. He also agreed as to definitions of trade secret information and confidential information and to protect trade secret information indefinitely and confidential information for a period of two years after his employment ended. Complaint ¶¶ 59-60; ECF No. 1-2 at 2-3. He further agreed not to solicit Quality Insulation's customers or employees for eighteen months after his employment ended. *Id.* ¶¶ 61; ECF No. 1-2 at 7-8.

Grover's responsibilities as a sales manager included identifying potential customers, providing proposals and submitting bids, monitoring market conditions, managing customer experiences from start to finish, and developing and maintaining compilations of information relating to Quality Insulation's projects, bids, and sales leads. *Id.* ¶ 35. Grover had access to Quality Insulation's confidential information and trade secrets, including customer lists, pricing information, project bids, vendor lists, contract terms, competitive intelligence, account strategies, and internal assessments. *Id.* ¶ 43. Quality Insulation invests substantial time and resources into developing and protecting this valuable information from dissemination to

competitors, including training employees on computer security, utilizing firewalls, logging access to the information, promulgating various confidentiality policies, giving access to only those employees who need it, quickly suspending terminated employees' access, and having employees sign nondisclosure agreements. *Id.* ¶¶ 45, 48.

While still employed by Quality Insulation, Grover surreptitiously took keys from Division Manager Brown and removed the confidentiality and noncompete agreement from the locked filing cabinet to prevent it from being enforced. *Id.* ¶¶ 29-30, 52-56. Quality Insulation only learned later that Grover admitted taking the agreement. *See id.* ¶ 55. As a result of Grover's conduct, Quality Insulation is no longer in possession of the agreement and instead must rely upon a "substantially identical" document signed by another employee around the same time Grover signed his agreement. *Id.* ¶¶ 25, 52; ECF No. 1-2.

Grover's employment with Quality Insulation ended in December 2023, shortly after which he formed Acadia Insulation. *Id.* ¶¶ 36, 39. Grover was purposely underperforming at the end of his employment to drive business to his new company. *Id.* ¶ 38. Acadia Insulation competes directly with Quality Insulation by also providing residential and commercial building insulation and gutter services. *Id.* ¶¶ 19-20, 40. Grover has retained, and he and Acadia Insulation have used, Quality Insulation's confidential information and trade secrets to solicit and perform work for Quality Insulation's customers, solicit and hire Quality Insulation's employees, and interfere with Quality Insulation's vendor relationships. *Id.* ¶¶ 63-67. Quality

Insulation's sales to customers formerly served by Grover are down 25% despite growth in the market. *Id.* ¶ 64.

### B. Procedural History

In July 2025, Quality Insulation filed a complaint against Grover and Acadia Insulation asserting claims of (1) breach of contract, (2) violations of the Maine Uniform Trade Secrets Act, (3) violations of the federal Defend Trade Secrets Act, (4) breach of fiduciary duty and duty of loyalty, (5) tortious interference, (6) trespass, and (7) conversion. Complaint ¶¶ 68-148. In October 2025, Grover and Acadia Insulation moved to dismiss the complaint for failure to state a claim. *See* Motion at 1.[2]

## II. Legal Standard

In considering Grover and Acadia Insulation's motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must accept Quality Insulation's well-pleaded facts as true and draw all reasonable inferences in its favor. *See García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013). I use a two-pronged approach to assess the plausibility of Quality Insulation's complaint, "first distinguishing the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited), and then determining whether the credited factual allegations are sufficient to support the reasonable inference that" Grover and

[2] In the past month or so, Quality Insulation has filed two letters requesting status updates from the Court about the pending motion to dismiss. *See* ECF Nos. 15-16. While I can understand the desire for an update, it is not my practice to provide status updates or give special priority to cases where such updates are sought. The parties can rest assured that I turned to this matter as soon as I could given my overall caseload.

Acadia Insulation are "liable for the misconduct alleged." *Kendell Seafood Imps., Inc. v. Mark Foods, LLC*, 171 F.4th 122, 124 n.2 (1st Cir. 2026) (cleaned up).[3] This "is a context-specific task that requires" me "to draw on" my "judicial experience and common sense." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (cleaned up).

## III. Discussion

### A. Allegations Made on "Information and Belief"

Grover and Acadia Insulation first argue that Quality Insulation's entire complaint is premised on implausible allegations. *See* Motion 5-6. They contend that I "need not accept as true" the allegations in Quality Insulation's complaint made on "information and belief" because those allegations are entirely speculative. *Id.*

While Grover and Acadia Insulation are correct that "the phrase 'information and belief' does not excuse pure speculation," *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 127 (1st Cir. 2025) (cleaned up), Quality Insulation is entitled to plead facts not within its direct knowledge on information and belief, *see* 5 A. Benjamin Spencer, *Federal Practice and Procedure* § 1224, Westlaw (database updated Apr. 2026) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are

[3] In their motion, Grover and Acadia Insulation assert that there is a "heightened pleading standard" that poses "a significant hurdle" for Quality Insulation "to clear before" its "complaint can survive a motion to dismiss." Motion at 4 (quoting *ACA Fin. Guar. Corp. v. Advest*, 512 F.3d 46, 56 (1st Cir. 2008)). The case Grover and Acadia Insulation rely on for this assertion, however, was discussing the heightened pleading standard imposed by the Private Securities Litigation Reform Act, which has no application in this case. *See ACA Fin. Guar. Corp.*, 512 F.3d at 51, 56.

not within the knowledge of the plaintiff but [it] has sufficient data to justify interposing an allegation on the subject." (footnote omitted)).

It makes sense that Quality Insulation lacks direct knowledge of Grover's alleged taking of his confidentiality and noncompete agreement. Its allegations made on information and belief in this context, however, are supported by its direct allegations that Grover's employment was contingent on signing such an agreement (as reflected in its offer letter), that he in fact signed such an agreement, that that agreement was placed in a locked filing cabinet in the office where he worked, and that it learned that he admitted to taking the agreement. *See* Complaint ¶¶ 21-27, 55; ECF No. 1-1.

Resolving inferences in Quality Insulation's favor, as I must, I conclude that the other allegations in its complaint are sufficient to credit its allegations made on information and belief for purposes of evaluating the instant motion to dismiss. *See Anthony v. Nat'l Republican Cong. Comm.*, No. 24-3052, 2025 WL 2741798, at *2 n.1 (3d Cir. Sept. 26, 2025) ("Information-and-belief statements may . . . be credited at the pleading stage if the other allegations in the complaint allow for the reasonable inference of their truthfulness, which often includes a description of the basis for the information and belief."); *cf. Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) (holding that a plaintiff making an allegation on information and belief should "set forth" any facts supporting the assertion).

### B. Breach of Contract Claim Against Grover

Grover argues that Quality Insulation's breach of contract claim necessarily fails because it has not "produced any contract" and "a claim for breach of contract needs a contract to be breached." Motion at 6.

Contrary to Grover's argument, Quality Insulation does not have to attach a signed contract to its complaint to allege plausibly the existence of a valid contract. *See* 5 A. Benjamin Spencer, *Federal Practice and Procedure* § 1235, Westlaw (database updated Apr. 2026) ("[A] complaint in a contract action must allege the existence of a valid and binding contract. . . . In pleading the existence of an express written contract, the plaintiff, at [its] election, may set it forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect." (footnotes omitted)); *W. Rsrv. Life Assurance Co. of Ohio v. Conreal LLC*, 715 F. Supp. 2d 270, 288 (D.R.I. 2010) (citing *Wright & Miller* and declining to dismiss based on the plaintiffs' "failure to attach the relevant contracts to" their complaints). Moreover, courts have held that a plaintiff may plausibly allege the existence of a written contract even when the contract is admittedly not in its possession. *See, e.g.*, *Stewart v. Feldman*, No. 2:20-cv-00776-JMG, 2020 WL 2193336, at *1 n.1 (E.D. Pa. May 6, 2020) ("[T]he Court finds Plaintiff's claim of a written contract plausible even though the contract is not in his possession.").

Here, Quality Insulation alleges the existence of a valid and binding confidentiality and noncompete agreement, pleads the legal effects of that agreement, and attaches a "substantially identical" copy of the agreement signed by a different

employee. Complaint ¶¶ 25-26, 31, 57-61; ECF No. 1-2. These allegations are sufficient to support the existence of a valid contract necessary for its breach of contract claim and to give Grover notice of the nature of the claim against him. *See 1 Energy Sols., Inc. v. Nicholas Holiday, Inc.*, No. CV-13-5000-MWF (Ex), 2013 WL 12133654, at *2 (C.D. Cal. Nov. 5, 2013) ("In federal court, a plaintiff need not even produce a written contract in order to claim rights under it. Plaintiffs plead that the Letter of Intent was executed, although they have not been able to locate a copy. Despite not being required to include the agreement in their complaint, Plaintiffs have attached an unexecuted copy of the alleged contract. The allegations in the Complaint along with the [unexecuted contract] suffice to put Defendant on notice of the nature of the breach of contract claim against it, as required under Rule 8." (cleaned up)).[4]

Grover also asks me to consider an email exchange between him and Quality Insulation's human resources director that, according to him, establishes that the agreement does not exist. *See* Motion at 6-7; ECF No. 6-2.

As an initial matter, I am not persuaded that this email exchange, which is not referenced in the complaint, is properly considered at this stage where it is neither integral to Quality Insulation's claims nor susceptible to judicial notice. *See Haley v.*

[4] The cases Grover cites to the contrary are both procedurally and factually distinguishable. *See* Motion at 6-7; *Tate & Lyle Ingredients Ams., Inc. v. Transp. Distrib., LLC*, 746 F. Supp. 2d 189, 190, 196-98 (D. Me. 2010) (ruling, in the context of a motion for summary judgment, on the scope of the parties' contract); *Smith v. Jenkins*, 732 F.3d 51, 75 (1st Cir. 2013) (affirming the denial of a futile motion to amend where the plaintiff not only failed "to allege the existence of valid contracts, but he alleged quite the contrary" by asserting that fraud in the factum rendered any contract void); *Snow v. BE & K Constr. Co.*, 126 F. Supp. 2d 5, 7, 13-15 (D. Me. 2001) (ruling, on a motion to dismiss converted into a motion for summary judgment, that an employee was not bound by an arbitration clause in an unsigned employee handbook).

*City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (noting that a court may, when evaluating a motion to dismiss, consider "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice"); *Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (noting that a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment" (cleaned up)).

But even if I could properly consider the email exchange, it is not the panacea that Grover makes it out to be. Grover emailed the HR director asking for a copy of his "signed noncompete"; the HR director responded that the "executed non-compete" was "missing from [Grover's] personnel file at the branch" and that Quality Insulation had "reason to believe that" Grover had a copy; Grover responded that he did not have a copy, was unsure if he "even signed one," and since "neither [he] nor the company" had a copy, he was "going to look for work assuming that [he was] not bound by a non-compete"; and the HR director did not reply. ECF No. 6-2 at 1-2. Drawing inferences in Quality Insulation's favor, I fail to see how this constitutes an admission that the agreement does not exist or that Grover never executed it. *See Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 73 (1st Cir. 2021) (noting that, even when a court properly considers a document outside of a complaint when evaluating a motion to dismiss, it still must draw any inferences from the document in the plaintiff's favor).

### C. Trade Secret Claims Against Grover and Acadia Insulation

Grover and Acadia Insulation argue that Quality Insulation's claims against them under the Maine Uniform Trade Secrets Act (MUTSA) and the federal Defend Trade Secrets Act (DTSA) fail because the allegations in the complaint do not demonstrate that the information at issue constituted a trade secret or that Grover misappropriated the information. *See* Motion at 8-10.

MUTSA and DTSA define a trade secret as information that derives "independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 10 M.R.S.A. § 1542(4); 18 U.S.C. § 1839(3). Courts consider various factors when evaluating whether information falls within the definition of a trade secret, including "(1) the value of the information to the plaintiff and to its competitors; (2) the amount of effort or money the plaintiff expended in developing the information; (3) the extent of measures the plaintiff took to guard the secrecy of the information; (4) the ease or difficulty with which others could properly acquire or duplicate the information; and (5) the degree to which third parties have placed the information in the public domain or rendered the information 'readily ascertainable' through patent applications or unrestricted product marketing." *Spottiswoode v. Levine*, 1999 ME 79, ¶ 27 n. 6, 730 A.2d 166; *Allstate Ins. Co. v. Fougere*, 79 F.4th 172, 188 (1st Cir. 2023) (utilizing very similar factors in the DTSA context).

Considering these factors, I have no trouble concluding that Quality Insulation has alleged sufficient facts to demonstrate that the information meets the definition of a trade secret. In its complaint, Quality Insulation describes the information at issue and the many steps that it has taken to protect it in detail; the time, effort, and resources it took to gather the information; and why that information is valuable both to it and its competitors. *See* Complaint ¶¶ 41-50. Although the complaint does not specifically address how easily the information may be duplicated or how much of it is public information, Quality Insulation was not required to address every factor to state a claim. *See Workgroup Tech. Partners, Inc. v. Anthem, Inc.*, No. 2:15-cv-00002-JAW, 2016 WL 424960, at *22 (D. Me. Feb. 3, 2016) (holding that a plaintiff alleged sufficient facts that its information met "the statutory definition of a trade secret" under MUTSA even "though all of the *Spottiswoode* factors [were] not set forth in the" complaint). Moreover, drawing all inferences in Quality Insulation's favor, I conclude that the information at issue, as alleged, is not so easily replicated or readily available to the public as to remove it from the definition of a trade secret, even if *some* of the information might be obtained via legitimate sources, as Grover and Acadia Insulation suggest. *Cf. Catalyst & Chem. Servs., Inc. v. Glob. Ground Support*, 350 F. Supp. 2d 1, 8-9 (D.D.C. 2004) ("[I]t is widely accepted that a trade secret can exist in a combination of characteristics each of which, by itself, is in the public domain, and even if all of the information about those characteristics is publicly available, a unique combination of that information, which adds value to the

information may qualify as a trade secret." (cleaned up)).[5]

MUTSA and DTSA define misappropriation as the improper acquisition, disclosure, or use of a trade secret by someone who knew, or had reason to know, that the information was acquired through improper means or under a duty to maintain confidentiality. *See* 10 M.R.S.A. § 1542(2); 18 U.S.C. § 1839(5).

Once again, when viewed in the light most favorable to Quality Insulation, the complaint sufficiently alleges that Grover and Acadia Insulation have used and disclosed trade secrets that they knew Grover had a duty to keep confidential to solicit Quality Insulation's clients, which, in turn, has damaged Quality Insulation's business through lost customers and revenue.[6] *See* Complaint ¶¶ 43-44, 63-67. That Quality Insulation does not plead exactly how Grover and Acadia Insulation have used the trade secrets is not fatal to its claims at this stage. *See Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-cv-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) ("[T]here is no requirement that [Plaintiff] plead exactly how Defendants improperly obtained or used the alleged trade secret. Again, as discovery has not yet commenced, it would be unreasonable to require a plaintiff to demonstrate

---

[5] The cases Grover and Acadia Insulation cite to demonstrate otherwise are distinguishable in that the alleged trade secrets in those cases were much more readily obtainable through legitimate means. *See* Motion at 8-10; *RF Techs. Corp. v. Applied Microwave Techs., Inc.*, 369 F. Supp. 2d 17, 21-23 (D. Me. 2005) (concluding, on a motion for preliminary injunction, that a plaintiff failed to show a likelihood of success on the merits of a trade secrets claim where the "design dimensions and tolerances" of the product at issue could be readily reverse engineered from widely-distributed assembly drawings and inspecting the retail product itself); *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 32, 770 A.2d 97 (holding that the design of a clothes dryer was not a trade secret where it was readily reverse engineered from the patent application and an inspection of the dryer itself).

[6] For the first time in their reply, Grover and Acadia Insulation argue that Quality Insulation failed to allege that Grover knew he had to keep the trade secrets confidential where it has failed to produce a signed confidentiality agreement. *See* Reply (ECF No. 12) at 6. This argument is waived, and, even if it were not waived, it fails for the same reasons discussed above in the context of the breach of contract claim.

the precise ways in which Defendants may have used their trade secrets, given that Defendants are the only ones who possess such information." (cleaned up)).

**D. Breach of Fiduciary Duty and Duty of Loyalty Claim Against Grover**

Grover contends that Quality Insulation has failed to plead sufficient facts to establish that he owed it a fiduciary duty and duty of loyalty.[7] *See* Motion at 10-12.

A fiduciary duty arises from "(1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue." *Bryan R. v. Watchtower Bible & Tract. Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 19, 738 A.2d 839.[8] It is "difficult to articulate exactly what proof is required to establish the existence of a fiduciary relationship in particular circumstances," but a "fiduciary duty has been described as something approximating a business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance ordinarily exercised." *Id.* (cleaned up).

"In order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Id.* ¶ 21. "[S]imple recitations of a trusting" or confidential relationship "will not suffice for identifying a fiduciary duty." *Id.* ¶¶ 20-21.

---

[7] The duty of loyalty is part of a fiduciary duty. *See* Restatement (Third) of Torts § 16, Westlaw (database updated Aug. 2026) ("A fiduciary relationship creates the highest duty of loyalty known to the law. . . . A fiduciary owes a duty of undivided loyalty to the beneficiary of the relationship.").

[8] The disparity between the parties can be in the level of "trust reposed." *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me. 1975), *superseded in other parts by* Me. R. Evid. 301(a) *as recognized in Theriault v. Burnham*, 2010 ME 82, ¶ 9, 2 A.3d 324.

Here, contrary to Grover's arguments, Quality Insulation did more than just allege a general trusting relationship. It alleges that, as a sales manager, Grover occupied a position of trust and confidence as a customer-facing sales representative with many high-level responsibilities (outlined in detail) and was entrusted with valuable confidential information and trade secrets (also outlined in detail) as part of that role. *See* Complaint ¶¶ 35, 41-46. At this stage, drawing all reasonable inferences in Quality Insulation's favor, I conclude that it has plausibly alleged that Grover owed it a fiduciary duty. *See Advanced Micro Devices, Inc. v. Feldstein*, 951 F. Supp. 2d 212, 220 (D. Mass. 2013) (finding that a plaintiff had plausibly alleged that its employees owed it a fiduciary duty even where they were not "executives, officers or directors" where, as part of their roles, "they had access to confidential information of substantial value"); *Inner-Tite Corp. v. Brozowski*, No. 20100156, 2010 WL 3038330, at *19 (Mass. Super. Ct. Apr. 14, 2010) (finding that a regional sales manager owed his company a fiduciary duty where he "worked independently, was entrusted with sensitive and confidential information, and as the public face of [the company] in the . . . region, he occupied a position of trust and confidence").

**E. Tortious Interference Claim Against Grover and Acadia Insulation**

Grover and Acadia Insulation argue that Quality Insulation's "claim for tortious interference is entirely based on the faulty premise" that Grover was bound by a confidentiality and noncompete agreement. Motion at 12. This argument fails for the same reasons discussed above—i.e., Quality Insulation has alleged sufficient facts to establish the existence of a valid agreement.

Grover and Acadia Insulation also argue that, even if Grover had signed such agreement, it would be an unenforceable adhesion contract. *See* Motion at 13. To support their argument on this point, however, they cite only *Kelly Services, Inc. v. Greene*, 535 F. Supp. 2d 180, 181, 185 (D. Me. 2008), a decision on a motion for preliminary injunction where the court found that a business was unlikely to succeed in enforcing, under Michigan law, a noncompete agreement against its former employee. In the absence of a more developed argument on this point with citations to relevant authorities, I decline to address this argument further. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (cleaned up)).

Finally, Grover and Acadia Insulation contend, for the first time in their reply in support of their motion, that Quality Insulation's complaint is devoid of any allegations that they interfered with its contracts or business relations through fraud or intimidation, as is necessary to state a claim for tortious interference under Maine law. *See* Reply at 7-8. I decline to address this argument because it is waived. *See Donovan v. Nappi Distribs.*, 703 F. Supp. 3d 135, 259 (D. Me. 2023) ("In this court, reply memoranda are to be strictly confined to replying to new matter raised in the objection or opposing memorandum and issues raised for the first time in reply memoranda will not be considered." (cleaned up)).

### F. Trespass & Conversion Claims Against Grover

Grover lastly argues that Quality Insulation's claims for trespass and conversion must be dismissed because they are based on allegations made on "information and belief" and there is a "complete lack of evidence to support" those allegations. Motion at 1-2, 14-15. These arguments fail for the same reasons discussed above, and I will also make the obvious observation that "evidence is not required at the pleading stage." *Carlson v. CSX Trasnp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014).

## IV. Conclusion

For the foregoing reasons, Grover and Acadia's motion to dismiss is **DENIED**.[9]

Dated: September 29, 2026

/s/ Karen Frink Wolf
United States Magistrate Judge

[9] Grover and Acadia Insulation embed a Fed. R. Civ. P. 11 motion for sanctions in their motion to dismiss. *See* Motion at 15-16. Their embedded motion is **DENIED** because they failed to follow the procedural requirements of Rule 11. *See Triantos v. Guaetta & Benson, LLC*, 52 F.4th 440, 447 (1st Cir. 2022) ("Failure to comply with [Rule 11's] carefully wrought procedural requirements disqualifies Rule 11 as a basis for sanctions." (cleaned up)). While Grover and Acadia Insulation did serve a letter on Quality Insulation threatening to file a motion for sanctions under Rule 11, *see* ECF No. 6-3, they did not serve their actual motion for sanctions as required, *see Triantos*, 52 F.4th at 447 ("While parties are encouraged to give informal notice whether in person or by a telephone call or letter before serving a Rule 11 motion, this informal notice is not a substitute for actual service of the motion. Only service of the motion triggers the 21-day safe harbor period." (cleaned up)). Additionally, Grover and Acadia Insulation failed to make their motion "separately from any other motion" as required. Fed. R. Civ. P. 11(c)(2); *see id.* advisory committee's notes to 1993 amendment ("The rule provides that requests must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in another motion."); *Noel v. United Better Homes, LLC*, No. 1:23-cv-00028-SJM-TLSM, 2024 WL 5155736, at *1 (D.R.I. Nov. 8, 2024) ("Under Rule 11, a motion must be made separately from any other motion. Here, however, [the plaintiff] seeks Rule 11 sanctions as part of a broader motion. Consequently, his motion for sanctions must be denied on this basis alone." (cleaned up)). Notwithstanding my denial of the motion for sanctions, I decline Quality Insulation's passing invitation to award it, as the prevailing party under Rule 11(c)(2), the attorney's fees and costs it expended in opposing the motion for sanctions, *see* ECF No. 9 at 7, 11-12, because to do so would require the submission of further evidence and briefing on this side issue, which would only serve to increase costs and further delay resolution of this matter, *cf. CQ Int'l Co. v. Rochem Int'l., Inc.*, 659 F.3d 53, 62 (1st Cir. 2011) (noting that Rule 11 is intended to streamline cases in federal court not "invite full-scale satellite litigation in the area of sanctions").